IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANASTASIA KINSEY, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 06-1428 |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | |

APPEARANCES:

Robert Anthony Petruzzelli, Esquire
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavillion
10 Melrose Avenue
Suite 340
Cherry Hill, NJ 08003
     Attorney for Plaintiff

Christopher J. Christie
UNITED STATES ATTORNEY
     By:  Sheena V. Barr
          Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
     Attorney for Defendant

**SIMANDLE**, District Judge:

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration ("Commissioner"), denying the

application of the Plaintiff, Anastasia Kinsey, for Supplemental

Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq.

This Court must determine whether the Administrative Law Judge (ALJ) properly found that Plaintiff was not disabled after concluding that Plaintiff's residual functional capacity and vocational factors allowed her to perform work which exists in the national economy.  For the reasons stated below, this Court will reverse the Commissioner's finding of not disabled and remand the case to the Commissioner for the payment of benefits.

**I. <u>BACKGROUND</u>**

    **A. <u>Procedural History</u>**

Plaintiff filed an application for Supplemental Security Income on April 18, 1997, alleging disability from May 3, 1997. (R. at 19.)  Plaintiff's claims were denied initially and upon reconsideration.  (R. at 44-48.)  She then requested a hearing before an ALJ (R. at 53), and ALJ James J. D'Alessandro held a hearing on January 11, 1999 in Voorhees, New Jersey, and found that Plaintiff was not disabled.  (R. at 19, 34.)  Dissatisfied, Plaintiff filed a Request for Review.  (R. at 58.)  The Appeals Council granted this request and remanded the case for additional consideration before an ALJ because the Appeals Council could not find the record.  (R. at 63-65.)

On remand, ALJ Daniel W. Shoemaker, Jr. held a new hearing on September 22, 2004  (R. at 16-18), found that Plaintiff was

not disabled, and denied her application for Supplemental Security Income.  (R. at 29.)

**B.   Evidence in the Record**

The original record for this matter was lost and could not be found.  (R. at 64.) The following facts derive from the second record, constructed on the Appeals Council's remand.

**1.   Personal and Work History**

Plaintiff was born on June 12, 1970.  (R. at 274.) Plaintiff is single and lives with her mother.  (R. at 274.) Plaintiff has a high school education and has worked as a telemarketer, caregiver, and has done other light manual work. (R. at 36.)  From February of 2002 to February of 2003, Plaintiff worked as a telemarketer for QM Readers Service.  (R. at 58.) From June 5, 2002 to June 14, 2002, she worked as a pharmacy technician for Drug Emporium.  (R. at 58.)  From December of 2001 to March of 2002, she worked as a housekeeper for Lady in White Housekeeping Service, Inc.  (R. at 58.)  From May of 2001 to August of 2001, she worked at Enterprise Leasing Co.  (R. at 58.)

**2.   Medical History**

Plaintiff's limitations are mostly related to an automobile accident from 1989, left knee surgery in 1993, and an automobile accident from 1995.

Plaintiff was injured in an automobile accident on August 4, 1989.  (R. at 123.)  In a report dated April 19, 1990, Dr.

Kimberly Yeager wrote that she had treated Plaintiff for acute post traumatic cervical, thoracic, and lumbosacral sprain and strain, post traumatic concussion syndrome, and traumatic myositis of the trapezius.  (R. at 123).

Early in 1993, Plaintiff began having problems with her left knee.  (R. at 179-81.)  Dr. Rosen diagnosed her with a torn medial meniscus and a peripheral tear of the anterior cruciate ligament.  (R. at 129).  Plaintiff had arthroscopic surgery on her left knee on April 14, 1993 with Dr. Craig Rosen.  (R. at 131).  Subsequently, Plaintiff underwent physical therapy for her knee.  (R. at 136-37).

On May 31, 1995, Plaintiff injured her right leg in an automobile accident.  (R. at 160.)  In a report dated May 12, 1997, Dr. Gary Neil Goldstein reported that Plaintiff had undergone physical therapy for several months without success. (R. at 191.)  Dr. Goldstein also indicated that Plaintiff wanted arthroscopy even though he had explained that arthroscopy may not help her.  (R. at 191.)  However, the record does not contain evidence of this surgery.

Plaintiff has records of other problems.  She saw Dr. Koulin Chou in 1994 and 1995 for skin problems: breakouts and photosensitivity to the sun.  (R. at 197-200.)  She also has a history of asthma (R. at 212), irregular menstruation (R. at 219), and a history of migraine headaches.  (R. at 247.)

On June 30, 1998, Dr. Chris Wolf, a psychologist, examined Plaintiff.  (R. at 202-05.)  He found that Plaintiff was experiencing symptoms of anxiety and depression as a direct result of the car accident.  (R. at 204.)

### 3.   __Consultative Examinations__

On October 31, 2003, Dr. Lawrence G. Mintzer completed a consultative psychiatric examination of Plaintiff for the New Jersey Department of Labor, Division of Disability Determination. (R. at 236-41.)  Dr. Mintzer concluded that Plaintiff's limitations were moderate.  (R. at 241.)  Specifically, he found her ability to perform the following activities was "good:"[1] remember locations and work-like procedures; understand and remember short, simple instructions; carry out short, simple instructions; work with or near others without being distracted by them; and make simple work-related decisions.  (R. at 242.) Additionally, he found her ability to perform the following activities was "fair:"[2] understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain

---

[1] "Good" is defined on the same document as, "[t]he individual can perform the activity satisfactorily most of the time."  (R. at 242.)

[2] "Fair" is defined on the same document as, "[t]he individual can perform the activity satisfactorily some of the time."  (R. at 242.)

an ordinary routine without special supervision; complete a normal workday or workweek; and perform at a consistent pace. (R. at 242.)  Furthermore, he found that she had "trouble on tasks requiring concentration and short-term memory."  (R. at 242.)

On November 3, 2003, Dr. Arthur Marks performed a consultative physical examination of Plaintiff for the New Jersey Department of Labor, Division of Disability Determination.  (R. at 244-48.)  He assessed she had: status post reconstructive surgery left knee; bilateral patellofemoral syndrome with bilateral joint disease; status post cervical, lumbar sprains and strains without objective findings on physical examination; bilateral temporomandibular joint syndrome; a history of migraine headaches; a history of hereditary anemia; and a history of seasonal asthma.  (R. at 247-48.)

### 4.   Hearing Testimony of the Vocational Expert

At the hearing before ALJ Shoemaker, vocational expert Leo Hamilton (vocational expert or Mr. Hamilton) testified.  (R. at 279-287.)  The ALJ posed a hypothetical Residual Functional Capacity (RFC) to Mr. Hamilton based on a hypothetical worker with both physical and mental impairments.  (R. at 281-82.)

The ALJ based the hypothetical physical limitations on the consultative examination by Dr. Marks.  (R. at 282.)  The ALJ described the hypothetical worker:

who is able to sit six hours in an eight hour work
day, given normal breaks.  Our worker can stand six
hours in an eight hour work day. But nothing over
two hours at a time. Our worker is limited to
walking a total of two hours. And is limited to
walking for 30 minute intervals, up to a total of
two hours. Our worker is able [to] lift and carry
40 pounds occasionally. But is restricted to
lifting and carrying 20 pounds frequently due to
problems with her knees. And our worker cannot
carry on a prolonged basis, more than 30 minutes at
a time. And so our worker cannot engage in
repetitive pushing and pulling with the lower
extremities over two hours at a time. And also is
limited to the weights in the lower extremities
that I've given to you. There are various postural
limitations. Our worker never can climb ladders,
ropes or scaffolds, and can never crawl. These
functions, the following functions are restricted
to occasional and that is, climbing ramps and
stairs, kneeling and crouching, that's occasional.
But the worker is able frequently to balance and
stoop. And finally, there are environmental
limitations. The worker should not be subjected to
concentrated or extremes in temperatures, dusts,
humidity or wetness, or fumes, odors, chemicals and
the like . . . [b]ecause our worker has asthma and
skin sensitivity problem[s].

(R. at 282.)

Next, the ALJ based the hypothetical mental limitations on

the consultative examination by Dr. Mintzer.  (R. at 283.)  The

ALJ defined "good" for purposes of describing the mental

limitations as "satisfactory performance . . . most of the time,

more than half of the time."  (R. at 283.)  The ALJ defined

"fair" as "satisfactory performance . . . less than half the

time."  (R. at 283.) First, the ALJ noted that the hypothetical

worker could not understand, remember, or carry out detailed

instructions.  (R. at 283.)  Second, the ALJ posited that the

7

hypothetical worker had fair limitations: "in maintaining
attention and concentration for extended periods, and on complex
and detailed work. But otherwise, can perform satisfactorily, can
maintain attention and concentration satisfactorily on simple
routine wrote [sic] repetitive tasks."  (R. at 283-84.)  Third,
the ALJ noted that the hypothetical worker had good limitations:
"in ordinary routine work with or near others. Make simple work
related decisions. Complete a normal work day and work week. And
perform at a consistent pace."  (R. at 284.)

Based on this hypothetical worker, Mr. Hamilton concluded
that these restrictions would prevent Plaintiff's past relevant
work.  (R. at 285.)  Next, after considering Plaintiff's
vocational factors,[3] Mr. Hamilton concluded that Plaintiff could
perform other work in the national economy, namely as a toll
collector, a silverware wrapper, or a bench assembler.  (R. at
286.)  The ALJ asked Mr. Hamilton if this job information
conflicted with the Dictionary of Occupational Titles (DOT); Mr.
Hamilton answered no.  (R. at 286.)

Next, Plaintiff's attorney questioned Mr. Hamilton.  (R. at
287.)  Plaintiff's attorney asked whether Mr. Hamilton's
assessment would change if the hypothetical worker "had less than
a 50 percent chance of completing a normal work day or work

---

[3] "We have 34 years old. A high school education. And a work
background that we've discussed."  (R. at 285.)

8

week;" Mr. Hamilton answered that this change would preclude substantial gainful activity ("SGA") for all work.  (R. at 286-87.)  Additionally, Plaintiff's attorney asked whether the toll collector job would still be an option if the hypothetical worker was "hypersensitive to the sun and fire maybe, such as fumes;" Mr. Hamilton answered that the toll collector job would be precluded.  (R. at 287.)  Finally, Plaintiff's attorney asked how a "history of migraine headaches that causes this person to lose two days of work every other week" would affect the assessment; Mr. Hamilton answered that this would preclude all employment. (R. at 287.)

The ALJ asked Plaintiff's attorney for medical exhibits to support these changes to the hypothetical worker.  (R. at 287.) For the migraine headaches, Plaintiff's attorney referred to "[o]ne of the medical exhibits" that indicated that Plaintiff was taking Fiorinal.  (R. at 288.)  For the skin problems, Plaintiff's attorney referred to the reports by Dr. Chou.  (R. at 288.)

## II. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a claimant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must

9

uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit

Court of Appeals held that an "ALJ must review all pertinent
medical evidence and explain his conciliations and rejections."
Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir.
2000).  Similarly, an ALJ must also consider and weigh all of the
non-medical evidence before him.  Id. (citing Van Horn v.
Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris,
642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit held that access to the Commissioner's
reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to determine
> whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder."  Williams, 970 F.2d at
1182.  However, an ALJ need not explicitly discuss every piece of
relevant evidence in his decision.  See Fargnoli v. Massanari,
247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker,

721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B. <u>Standard for Disability Insurance Benefits</u>

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. §1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

12

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he

is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see also Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, ALJ Shoemaker concluded that Plaintiff was "not disabled" within the meaning of the Act.  (R. at 20.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the onset of the alleged disability. (R. at 27.)  At step two, the ALJ found that Plaintiff suffered the following "severe impairments:" degenerative disease of both knees with residuals of left knee surgery, and obsessive compulsive disorder. (R. at 27.)  At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal those listed under 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 27.)  At step four, the ALJ found that Plaintiff could not return to her past relevant work.  (R. at 27.)  However, at step five, the ALJ found that Plaintiff could perform other work which exists in the national economy.  (R. at 27.)  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act at step five.  (R. at 22).

**C.   Plaintiff's Arguments**

Plaintiff argues that the Commissioner erred in finding her "not disabled" because: (1) the hypothetical question the ALJ

14

posed to the vocational expert did not include all of Plaintiff's
impairments, (2) Defendant failed its burden of proof to show
that there is other work because the testimony of the vocational
expert conflicted with the DOT, and (3) the administrative record
provides sufficient basis for summary judgment for Plaintiff.
Because this Court finds that the ALJ's hypothetical question to
the vocational expert did not include all of Plaintiff's
impairments, this Court will reverse the Commissioner's finding
of not disabled and remand to the Commissioner for the payment of
benefits.

### 1.   **ALJ's Hypothetical to the Vocational Expert**

Plaintiff argues that the ALJ failed to include all of
Plaintiff's impairments in the hypothetical to the vocational
expert.  Specifically, Plaintiff argues that the ALJ did not
include: (1) Plaintiff's not severe impairments, and (2) the
limitations that Dr. Mintzer found fair.  The ALJ relied on the
vocational expert's testimony to find that Plaintiff could
perform other jobs at step five.  (R. at 27.)  In a hypothetical
question posed to a vocational expert, the ALJ must include all
of claimant's impairments that are supported by the record.
Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (holding
Commissioner failed its burden at step five because ALJ's
hypothetical question to vocational expert failed to include
claimant's impairment of constant and severe pain, which was

15

supported by objective medical findings).  An ALJ must accurately convey all of the claimant's "credibly established limitations" in a hypothetical question posed to a vocational expert. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (holding that ALJ properly relied on vocational expert's testimony where ALJ reasonably discounted claimant's impairments that were not included in hypothetical question).

First, Plaintiff argues that the ALJ dismissed Plaintiff's not severe impairments.  (Pl.'s Mem. Supp. Summ. J. at 12.) Specifically, Plaintiff argues that the ALJ dismissed the following "not severe" impairments: bilateral TMJ, low back pain syndrome, cervical spine sprain and strain, asthma, headaches, and other problems. (Pl.'s Mem. Supp. Summ. J. at 12.)  However, the ALJ considered these impairments and reasonably discounted them when the ALJ found that these impairments were "not severe" and did not result in significant functional limitations.  (R. at 22.)  For the neck soreness, bilateral TMJ, back pain, and cervical strain and sprain, the ALJ relied on the consultative examination by Dr. Marks to find that these impairments were not severe.  (R. at 21, 25.)  For the asthma, the ALJ noted Plaintiff's medical records, but discounted them by noting that Plaintiff herself had indicated that she felt her asthma was under control.  (R. at 21.)  For the headaches, the ALJ noted that Plaintiff had migraine headaches and that she took Fiorinal

16

for them.  (R. at 21-22.)  For the skin problems, the ALJ noted that Plaintiff had not been using the topical treatment properly. (R. at 21.)  Furthermore, for the gynecological problems, the ALJ noted that a pelvic ultrasound was unremarkable and that a PAP smear came up negative.  (R. at 21.)  Additionally, the ALJ specifically found that Plaintiff had some subjective pain, but not to the extent Plaintiff claimed because the ALJ found the Plaintiff's testimony not credible.  (R. at 26.)  Thus, contrary to Plaintiff's argument that the ALJ dismissed these impairments, the ALJ considered them and reasonably discounted them.  See Rutherford, 399 F.3d at 554 (holding that ALJ properly relied on vocational expert's testimony where ALJ reasonably discounted claimant's impairments that were not included in hypothetical).

Second, Plaintiff argues that the ALJ failed to include the fair limitations Dr. Mintzer found in his consultative assessment.  (Pl.'s Mem. Supp. Summ. J. at 14.)  For the hypothetical question posed to the vocational expert regarding Plaintiff's mental and cognitive limitations, the ALJ explicitly indicated that he was relying on Dr. Mintzer's consultative exam. (R. at 283.)  The ALJ provided the vocational expert with definitions for "good" and "fair."  The ALJ defined "good" for purposes of describing the mental limitations as "satisfactory performance . . . most of the time, more than half of the time."

(R. at 283.)  The ALJ defined "fair" as "satisfactory performance
. . . less than half the time."  (R. at 283.)

Next, the ALJ indicated that the hypothetical worker had
_fair_ limitations: "in maintaining attention and concentration for
extended periods, and on complex and detailed work."  (R. at 283-
84.)  However, Dr. Mintzer had found that Plaintiff had the
following additional fair limitations in: performing activities
within a schedule; maintaining regular attendance and be
punctual; sustaining an ordinary routine without special
supervision; completing a normal workday or workweek; and
performing at a consistent pace.  (R. at 242.)

However, the ALJ then told the vocational expert that the
hypothetical worker's abilities to "[c]omplete a normal work day
and work week" and to "perform at a consistent pace" were _good_
limitations.  (R. at 284.)  Significantly, the ALJ erroneously
told the vocational expert that Plaintiff's ability to "complete
a normal workday or workweek" and "perform at a consistent pace"
were good limitations, when in fact Dr. Mintzer had found that
these were fair limitations.  The ALJ stated at the hearing that
he was relying on Dr. Mintzer's report for this hypothetical
question, yet the ALJ failed to explain this discrepancy.

Furthermore, when Plaintiff's attorney asked the vocational
expert if his assessment would change if the hypothetical worker
"had less than a 50 percent chance of completing a normal work

day or work week," he answered that this change would preclude
all SGA.  (R. at 286-87.)  Having a less than 50 percent chance
of completing a normal workday or workweek is functionally
similar to having a fair limitation: satisfactory performance
less than half the time.  Thus, if the ALJ had told the
vocational expert the hypothetical worker's ability to complete a
normal workday or workweek was fair, the vocational expert would
have concluded that this change in ability would preclude SGA.
In turn, the ALJ would have found that Plaintiff was disabled
because she could not perform substantial gainful activity.

Thus, the ALJ's hypothetical question to the vocational
expert did not include all of Plaintiff's impairments that are
supported by the record, and the omitted impairments are material
because the expert has testified that his conclusion would be
different, that is, a finding that no jobs exist in the national
economy that plaintiff could perform.  Because the vocational
expert's conclusion that Plaintiff could perform other work was
based on a hypothetical question that did not include all of
Plaintiff's credibly established impairments, the vocational
expert's testimony was not substantial evidence.  See Rutherford,
399 F.3d at 554; Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.
1984) (finding that vocational expert's testimony is not
substantial evidence where hypothetical question did not include
all of claimant's impairments).  Additionally, the ALJ relied on

the vocational expert's testimony to conclude that Plaintiff could perform other work.  (R. at 27.)  Thus, the ALJ's finding that Plaintiff was "not disabled" at step five was not supported by substantial evidence because the ALJ relied on the vocational expert's testimony, which was based on a defective hypothetical.

This error requires this Court to reverse.  The error is not harmless because it deprives the Commissioner of substantial evidence in the record to support her final determination.  Upon review of the entire record, the reviewing court "shall have power to enter . . . a judgment . . . reversing the decision of the [Commissioner]."  42 U.S.C. § 405(g).  In reversing and awarding benefits to a claimant, the reviewing court must establish that the administrative record of the case has been fully developed and that substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.  Podedworny, 745 F.2d at 221-22.  In such cases, it would be unreasonable for the reviewing court to remand for further administrative proceedings "because the administrative proceeding would result only in further delay in the receipt of benefits."  Id. at 222.  Additionally, the reviewing court may reverse where the Commissioner failed to rebut the claimant's strong prima facie case.  Woody v. Sec'y of Health and Human Servs., 859 F.2d 1156, 1163 (3d Cir. 1988).

As noted above, the vocational expert testified that if the hypothetical worker's ability to complete a normal workday or workweek was fair, this would preclude all SGA.  This is substantial evidence indicating that Plaintiff is disabled because her fair ability to complete a normal workday or workweek, as determined by Dr. Mintzer, the consultative doctor, and as confirmed by the medical history, would preclude substantial gainful activity.  Additionally, because the ALJ's reliance on the vocational expert was misplaced, the Commissioner failed to rebut the claimant's strong prima facie case.  Moreover, in light of the expert's responses to Plaintiff's counsel's questions, it seems highly improbable that the Commissioner could rebut Plaintiff's prima facie showing, given that the vocational expert would have concluded that a fair ability to complete a normal workday or workweek would preclude all SGA.  Thus, it would be unreasonable to remand for further administrative proceedings because they would only further delay the receipt of benefits.

### 2.   <u>Plaintiff's Other Arguments</u>

Because this Court has determined that the ALJ erroneously relied on the vocational expert's testimony, which was based on a hypothetical question that failed to include all of Plaintiff's credibly established limitations, this Court will not address Plaintiff's other arguments.

III. **<u>CONCLUSION</u>**

For the reasons stated above, this Court will reverse the Commissioner's finding that Plaintiff is "not disabled" and remand to the Commissioner for the payment of benefits.  The accompanying Order is entered.


<u>**June 15, 2007**</u>                    <u>**s/ Jerome B. Simandle**</u>
DATE                              JEROME B. SIMANDLE
                                  United States District Judge